UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT RHODES,

      Plaintiff,

v.                                                                          Case No. 15-13805
                                                                            HON. DENISE PAGE HOOD

CITY OF DEARBORN CHAPTER 23 PENSION
ORDINANCE & CITY OF DEARBORN POLICE
AND FIRE REVISED RETIREMENT SYSTEM,
BOARD OF TRUSTEES, CARL MEYERS,
BRODIE KILLIAN, ALAN C. BRZYS,
JEFFREY GEE, BRIAN KEITH, MICHAEL
WEINBURGER, and THOMAS NORWOOD,

      Defendants.

_____/

**ORDER DENYING IN PART AND GRANTING
IN PART DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS [#11] AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#26]**

## I.    INTRODUCTION

On September 14, 2015, pursuant to a stipulation of the parties, Plaintiff Scott

Rhodes, proceeding in pro per, filed a three-count complaint against Defendant City

of Dearborn in the Third Circuit Court of Michigan, which Defendants received on

September 28, 2015. On October 28, 2015, Defendants removed Plaintiff's action to

this Court.   Defendants moved for judgment on the pleadings pursuant to

Fed.R.Civ.P. 12(c). [Dkt. No. 11]  Plaintiff did not file a timely response.  At a July

13, 2016 hearing, the Court gave Plaintiff an opportunity to file a written response, and he did so. Defendants filed a reply, and a hearing was held on August 11, 2013.

On September 13, 2016, Defendants filed a motion for summary judgment [Dkt. No. 26] that, but for citations to Plaintiff's deposition testimony rather than the pleadings and some facts regarding an arbitration proceeding, is essentially identical to their motion for judgment on the pleadings. The motion for summary judgment was fully briefed. The Court, having concluded that the decision process would not be significantly aided by oral argument, ordered that the motion for summary judgment be resolved on the motion and briefs submitted by the parties. E.D. Mich. L.R. 7.1(f)(2). The Court grants in part and denies in part Defendants' Motion for Judgment on the Pleadings and denies Defendants' Motion for Summary Judgment.

## II.   STATEMENT OF FACTS

Plaintiff is a former firefighter for the City of Dearborn. Plaintiff initially began employment with the City of Dearborn's Fire Department in March 2004, and Plaintiff was a member of the Dearborn Police and Fire Retirement System ("Retirement System").

Under the Retirement System's Pension Ordinance, a member "may be retired by the [Pension Board] upon written application filed with the" Pension Board: (1) when the member has 10 or more years of credited service but, as is the case with

Plaintiff, has not satisfied the general age and service requirements, (2) if he "become[s] totally and permanently incapacitated for his duty as an employee" for reasons not attributable to the performance of his duties as an employee. [Dkt. No. 11, Ex. A, PgID 103-04 (Pension Ordinance, § 235.09(1))].

To be eligible for duty disability pension benefits under either Section 235.09(1), (a) the member must undergo medical evaluations by a medical committee of three physicians, one of whom is selected by the member, one of whom is selected by the Pension Board, and the third of whom is chosen by agreement of the first two physicians; and (b) the majority of this medical committee must find that the member is totally and permanently incapacitated from the further performance of duty. [*See* Dkt. No. 11, Ex. A, PgID 103-04 (Pension Ordinance, § 235.09(1))]

Plaintiff claims that, beginning in 2012, he began to have significant family issues, including filing for divorce from his wife of 7½ years. Shortly thereafter, Plaintiff's wife began contacting Dearborn officials and telling them that Plaintiff was taking bribes and having sexual relations while he was on duty. Plaintiff contends that such allegations caused investigations and unpleasant interactions with his supervisors, including "unwarranted" warnings to Plaintiff. In February 2013, a consent judgment of divorce was entered, along with mutual restraining orders for Plaintiff and his ex-wife. Plaintiff contends this created a great deal of stress in his

3

life, and he took five weeks of leave to treat his stress. He continued to have problems in his personal and professional life through 2013 and into early 2014. Plaintiff was hospitalized for suicidal ideations, and beginning in or about March 2014, took a 12-week FMLA leave for depression, anxiety, and stress.

While on FMLA leave, Plaintiff was seen by Dr. Shiener. According to Plaintiff, Dr. Shiener concluded in an April 2014 letter that Plaintiff was "unfit for the performance of any sort of work on the basis of his anxiety and depression." In April or May 2014, relying on Dr. Shiener's report, Plaintiff filed an application for duty disability retirement from Defendant City of Dearborn due to Post-Traumatic Stress Disorder. Dr. Shiener answered several questions from Defendant City of Dearborn and reported that Plaintiff's "capacity [inability to work] is likely to be permanent." The City of Dearborn's Pension Board then voted to send Plaintiff to Dr. Elliot Wolf (a psychiatrist chosen by Defendant) for evaluation. Dr. Wolf concluded that Plaintiff was not suffering from any incapacity whatsoever and that, in Dr. Wolf's opinion, Plaintiff was "psychiatrically capable of returning to work immediately." [Dkt. No. 21, PgID 316]

Pursuant to the Pension Ordinance, because Dr. Shiener and Dr. Wolf did not agree on Plaintiff's disability status, a third psychiatrist, Dr. Rosen, was chosen by agreement of Dr. Shiener and Dr. Wolf. Dr. Rosen examined Plaintiff on or about

4

October 8, 2014.  Dr. Rosen sent the Pension Board a letter regarding his examination

of Plaintiff.  The letter concluded with Dr. Rosen's responses to a set of questions

regarding possible incapacitation of Plaintiff, as set forth below (verbatim):

1. Is the member mentally incapacitated from performance of the position's duties?
   **YES**
2. If incapacitated, what is the nature of the incapacity? **Major Depressive Disorder(296.20)**
3. If incapacitated is the condition treatable? **Yes, with antidepressant medication, psychotherapy, and job counseling it is likely that he will recover.**  If so, can the member be expected to recover and be employed as a fireman and/or in other employment? **I am unable to determine at this time if he would be able to return to his prior employment as a fireman with the City of Dearborn.  However, once he recovers it is likely he will be able to return to employment with another employer or in another occupation.** What is the expected time for the member to recover to an employable level? **Assuming he remains in treatment, it is likely that there would be significant recovery in 6 months.  I recommend he be re-evaluated at that time regarding his employability.**
4. If incapacitated, in the capacity permanent? **No**

[Dkt. No. 26, Ex. J, at PgID 581][1]

On October 20, 2014, the Pension Board notified Plaintiff that it would address

his duty disability application at a regularly-scheduled meeting on October 23, 2014.

At the October 23, 2014 meeting, which Plaintiff did not attend, the Pension Board

met and reviewed Plaintiff's duty disability application.  Based on the opinions of Dr.

---

[1] With respect to question 4., the Court will presume for purposes of its analysis that the word "in" was a typo and the intended word was "is."

Wolf and Dr. Rosen, the Pension Board concluded that: (a) "a majority of the three-physician medical committee did not find Plaintiff to be totally and permanently incapacitated from the performance of his duty;" [Dkt. No. 11, PgID 64] and (b) "Plaintiff did not satisfy the elements of the Pension Ordinance" to qualify for duty disability pension. *Id.* The Pension Board denied Plaintiff's application for duty disability pension.

Plaintiff asked the City of Dearborn if he could appeal the Pension Board's decision, but he was advised that there was no appeal procedure for the Pension Board's decision. Plaintiff submitted a second duty disability application but, as he was no longer an employee of the City of Dearborn, the application was refused because he was ineligible to apply for a duty disability pension. *Id.*

Plaintiff filed a grievance regarding the denial of his duty disability application (and his termination). He was represented by counsel during that process, which culminated in arbitration. [Dkt. No. 26, Ex. N (Arbitration Opinion)]. After a complete hearing, where all parties were given the opportunity to present evidence, and the filing of post-hearing briefing (as set forth below), the arbitrator denied Plaintiff's duty disability application, stating:

> I do not believe, and thus cannot conclude, that the Pension Board acted arbitrarily and capriciously. I do not find that statements contained in Dr. Rosen's report are so clearly ambiguous that the Pension Board cannot utilize Dr. Rosen's responses to add support to its

conclusion that the grievant was not totally and permanently incapacitated from performing the duties of his position as outlined in the pension language. Dr. Rosen stated in his report that the grievant's incapacity was not permanent. He went on to indicate that he was unable, at the time of the exam, to determine if the grievant could return to his prior employment. A fair reading of the report suggests there is the possibility the grievant could return to the City in the capacity he held when he was terminated. Further, I am not persuaded that the Pension Board applied the incorrect standard in determining that the grievant was not eligible for a duty disability pension. Lastly, this Opinion and Award, unless the contract states otherwise, is not intended to preclude the grievant from applying to another forum for relief.

After carefully analyzing the record, I have no alternative but to deny the grievance.

[Dkt. No. 26-15, Ex. N. at PgID 608].

On October 28, 2015, Plaintiff filed a three-count Complaint in this Court, wherein he alleged: (1) a due process violation of the United States Constitution; (2) vagueness; and (3) unbridled discretion.

## III.  APPLICABLE LAW & ANALYSIS

## A.  Standard of Review

### 1.  Rule 12(c)

In deciding a motion brought pursuant to Rule 12(c), the standard is the same as that used in evaluating a motion brought under Fed.Civ.P. 12(b)(6). *See, e.g.*, *Stein v U.S. Bancorp, et. al*, 2011 U.S. Dist. LEXIS 18357, at *9 (E.D. Mich. February 24, 2011). As such, the Court must construe the complaint in the light most favorable to

the plaintiff and accept all well-pleaded factual allegations as true. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

### 2.    *Rule 12(b)(6)*

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.,* 510 F. 3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v Twombly,* 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Ashcroft v Iqbal,* 556 U.S. 662, 678 (2009).

### 3.    *Rule 56*

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The presence of factual disputes will preclude granting of summary

judgment only if the disputes are genuine and concern material facts. *Anderson v.*

*Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). A dispute about a material fact is

"genuine" only if "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id*. Although the Court must view the motion in light most

favorable to the nonmoving party, where "the moving party has carried its burden

under Rule 56(c), its opponent must do more than simply show that there is

metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v.*

*Zenth Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Caterett*, 477 U.S.

317, 323-24 (1986).  Summary judgment must be entered against a party who fails to

make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial. In such a

situation, there can be "no genuine issue as to any material face," since a complete

failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A

court must look at the substantive law to identify which facts are material. Anderson,

477 U.S. at 248.

    *4.    42 U.S.C  §1983*

In order to successfully pursue an 1983 claim against a public official defendant, Plaintiff must establish: (1) a deprivation or violation of a federally-protected right, privilege, or immunity by the defendant; and (2) that the action of the defendant that violated the federally-protected right was caused by a person acting under the scope of state law. *McQueen v Beecher Cmty. Sch*., 433 F.3d 460, 463 (6th Cir. 2006). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He instead must have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). In this case, there is no dispute that the second element is satisfied, as all of the Defendants are state actors.

**B.    Constitutional Violation**

*1.    Was Pension Board's Decision Supported by Substantial Evidence?*

Defendants first argue that the Pension Board's decision, as a final agency decision, must be upheld if it is supported by competent and substantial evidence. "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Town v. Genesee Cnty. Emp. Ret. Sys.*, 2014 WL 1319690, at *10 (E.D. Mich. 2014), *aff'd* 618 F. App'x. 806 (6th Cir. 2015). "If there is sufficient

evidence, the . . . court may not substitute its judgment for that of the agency, even if the court might have reached a different result." *Town*, 2014 WL 1319690, at *10.

Defendants state that a finding of total and permanent incapacity by the majority of the three-physician medical committee is a pre-requisite to granting a member duty disability pension benefits. Citing Pension Ordinance, Section 235.09(1). Defendants argue that the "undisputed facts" in this case show that Plaintiff underwent three medical evaluations and two of the three medical evaluations (those of Dr. Wolf and Dr. Rosen) determined that Plaintiff was not "totally and permanently incapacitated from the performance of his duty." [Dkt. No. 11, PgID 64] It is undisputed that Dr. Wolf concluded that Plaintiff was not totally and permanently incapacitated for duty as a fireman for the City of Dearborn. Relying on Dr. Rosen's response to question "4." in Dr. Rosen's letter ("If incapacitated, i[s] the incapacity permanent? No"), Defendants argue that Dr. Rosen likewise concluded that Plaintiff is not totally and permanently incapacitated for duty as a fireman for the City of Dearborn.

Defendants contend that, because Dr. Wolf and Dr. Rosen concluded that Plaintiff was not permanently incapacitated, the Pension Board was prohibited from awarding a disability pension and had no choice but to deny Plaintiff's duty disability pension application. Plaintiff alleges and argues that Dr. Rosen never concludes that

11

Plaintiff was not totally and permanently incapacitated from working as a fireman for the City of Dearborn.[2]  The Court finds that: (1) Defendants' arguments regarding the "undisputed facts" are  erroneous and misplaced; and (2) there is a genuine dispute of material fact regarding what Dr. Rosen concluded as to Plaintiff's incapacity under the terms of the Pension Ordinance.

It is undisputed that a determination whether Plaintiff is eligible for a duty disability pension turns on whether Plaintiff "bec[a]me totally and permanently physically or mentally incapacitated for his duty as an employee."[3] [Dkt. No. 11, Ex. A, PgID 103 (Pension Ordinance, Section 235.09(1))]  "Employee" is a defined term under the Pension Ordinance that, for purposes of Plaintiff in this case, means "any person regularly employed by the employer as a . . . fireman." [Dkt. No. 11, Ex. A, PgID 84 (Pension Ordinance, Section 232.01(4))]  What Dr. Rosen (and Dr. Shiener and Dr. Wolf) had to determine was whether Plaintiff "bec[a]me totally and permanently physically or mentally incapacitated for his duty as" a fireman employed by the City of Dearborn.

---

[2]In both motions (and briefs in support thereof), Defendants largely overlook and/or ignore Plaintiff's allegations and arguments.

[3]As discussed in Section III.C. below, the quoted language above – the exclusive basis of the parties' arguments – is not consistent with language later in the same provision (Section 235.09(1)) that requires the three-physician medical committee to determine whether the "incapacity will probably be permanent[.]" [Dkt. No. 11, Ex. A, PgID 104 (Pension Ordinance, Section 235.09(1))]

The Court has reviewed Dr. Rosen's letter. [*See* Dkt. No. 26, Ex. J, PgID 577-81] Dr. Rosen was never asked – and he never answered – the question, "Is Plaintiff totally and permanently incapacitated from performing: (1) his duties as a fireman, (2) for the City of Dearborn." Contrary to Defendants' arguments and reliance on Dr. Rosen's answer to question "4." (where he states that Plaintiff's incapacity is not permanent),[4] the Court finds that substantial evidence does not support a finding that Dr. Rosen concluded Plaintiff is totally and permanently incapacitated from performing his duty as a fireman for the City of Dearborn.

In response to the first question in his letter, Dr. Rosen stated that Plaintiff was "mentally incapacitated from performance of the position's duties." The parties do not dispute, and the Court finds, that a reasonable (and perhaps the only) interpretation of that statement is that Plaintiff, at the time of Dr. Rosen's evaluation of Plaintiff, was mentally incapacitated from working as a fireman for the City of Dearborn. Likewise, the parties do not dispute the interpretation of Dr. Rosen's answer to the second question in his letter – that Plaintiff had a "Major Depressive Disorder."

In response to the first question in part "3.," Dr. Rosen opined that "it is likely that [Plaintiff] will recover" from his "incapacitated . . . condition." (emphasis added).

---

[4]Defendants do not address all of the responses Dr. Rosen provided to the questions in his letter, in particular those responses that appear to conflict with each other (as noted below).

13

Based on the lack of ambiguity in the two questions that preceded the first question in part "3.," presumably Dr. Rosen was answering the first question in part "3." in the context of whether Plaintiff could perform as a fireman for the City of Dearborn. Although Dr. Rosen apparently <u>believed</u> Plaintiff would not be totally and permanently incapacitated in the future ("it is likely that [Plaintiff] will recover"), a reasonable assessment of Dr. Rosen's statement is that, at the time he answered, Dr. Rosen was unable to <u>determine</u> that Plaintiff's would – or would not – be totally and permanently incapacitated in the future.  The Court finds that, based solely on Dr. Rosen's answer to the first question in part "3.," there is a genuine dispute of material fact regarding Dr. Rosen's "conclusion" about the permanence of Plaintiff's incapacity as it related to "the position's duties."

The Court finds that, after the first question in part "3.," the balance of the questions in part "3." and question four can be interpreted as asking about either: (a) <u>only</u> Plaintiff's ability to work as a fireman (but it is not even clear whether that means solely as a fireman for the City of Dearborn or as a fireman anywhere); or (b) Plaintiff's ability to be employed in any capacity.  First, in the second question to part "3.," Dr. Rosen had to answer an ambiguous, compound question – whether Plaintiff could "be expected to recover and be employed as a fireman <u>and/or</u> in other employment?" (emphasis added)  The first sentence of Dr. Rosen's response to that

14

question was, "I am unable to determine at this time if he would be able to return to his prior employment with the City of Dearborn."  That sentence allowed for the possibility that Dr. Rosen could, at some point in the future, determine that Plaintiff was not "mentally incapacitated for his duty as an employee." But, that sentence also indicates that, as of the date of the evaluation, Dr. Rosen was unable to conclude that Plaintiff was not "mentally incapacitated for his duty as an employee."

Second, the Court concludes that the second sentence of Dr. Rosen's response to the second question of part "3." fails to unequivocally demonstrate that Plaintiff was not "mentally incapacitated for his duty as an employee" (which, pursuant to the Pension Ordinance, means to work as a fireman for the City of Dearborn).  Instead, the second sentence of Dr. Rosen's response to the second question of part "3." only serves to further the ambiguity of his conclusion.  Dr. Rosen stated that "it is likely [Plaintiff] will be able to return to employment with another employer or another occupation" (emphasis added).  That sentence reasonably could be interpreted to mean that: (1) at that time of Dr. Rosen's response, Dr. Rosen believed Plaintiff was mentally incapacitated from working for the City of Dearborn as a fireman, and (2) Dr. Rosen believed that, when Plaintiff (likely) recovers, Plaintiff would be able to work as a fireman with another employer (but not the City of Dearborn) or in another occupation.

15

Third, the Court finds that Dr. Rosen's responses to the third and last question of part "3." reflect that, even under the best interpretation for Defendants, (1) Dr. Rosen did not believe Plaintiff could return to work as a fireman for the City of Dearborn for at least 6 months, and (2) Dr. Rosen "recommend[ed] [Plaintiff] be re-evaluated at that time regarding his employability." (emphasis added)   Several reasonable conclusions may be drawn from that response: (a) Plaintiff was "mentally incapacitated for his duty as an employee" on October 8, 2014; (b) Dr. Rosen was unable to determine until at least April 2015 whether Plaintiff would – or would not – be totally and permanently incapacitated – for any position (based on Dr. Rosen's use of the word "employability"); and (c) Dr. Rosen did not conclude that Plaintiff was not totally and permanently incapacitated for duty as an employee on October 8, 2014.

Fourth, the Court concludes that Dr. Rosen's response to question 4. supports a finding that there is a genuine dispute of material fact whether Plaintiff was permanently "mentally incapacitated for his duty as an employee" (which, pursuant to the Pension Ordinance, means working as a fireman for the City of Dearborn).  Dr. Rosen responded "No" to the question "If incapacitated, i[s] the capacity permanent?" In a light most favorable to Plaintiff, based on the ambiguity of the second and third questions – and the corresponding responses – in part "3.,"  Dr. Rosen's response to

16

question four: (1) only meant that Dr. Rosen believed that Plaintiff was not permanently incapacitated from "other employment;" and (2) does not even address Plaintiff's capacity to work as a fireman for the City of Dearborn.

For the reasons set forth above, the Court holds that there is not substantial evidence to support a finding that Dr. Rosen determined Plaintiff was not "totally and permanently physically or mentally incapacitated for his duty as an employee."  In the absence of Dr. Rosen unequivocally making such a determination, the Court holds there is a genuine dispute of material fact whether a majority of the three-physician medical committee determined that Plaintiff did not "become totally and permanently physically or mentally incapacitated for his duty as employee." [Dkt. No. 11, Ex. A, PgID 104 (Pension Ordinance § 235.09(1))]

    2.    *Property Interest*

Defendants ask the Court to dismiss Plaintiff's Section 1983 claim because Plaintiff does not allege or provide factual support to show that he had a federally protected property interest.   Defendants contend Plaintiff failed to meet the requirements under the Pension Ordinance to qualify to receive the benefits, so he did not have the property interest he claims. *See, e.g., American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) (holding that an employee covered by a state worker's compensation system did not have a property interest in immediate, unconditional

17

payment of worker's compensation benefits when those benefits were conditioned on determinations of eligibility).

Defendants assert that the language of the Pension Ordinance is insufficient to bestow on Plaintiff a protected property interest, as Plaintiff must satisfy the required conditions to be eligible. Defendants state that, although Plaintiff may have had an expectation that he should receive a duty disability pension, the Pension Ordinance does not automatically create a legitimate claim of entitlement. Defendants argue that a protected property interest exists only upon satisfaction of the Pension Ordinance requirement that a majority of the three-physician committee find that he is permanently and totally incapacitated, which Defendants suggest is not possible in this case. But, in a light most favorable to Plaintiff, Defendants' argument is premised on the erroneous belief that two of the three physicians on the medical committee concluded that Plaintiff was not permanently and totally incapacitated from performing as a fireman for the City of Dearborn.

For the reasons discussed in Section III.B.1. above, the Court concludes that Plaintiff has alleged that, and there is a genuine dispute of material fact whether, Plaintiff has a federally protected property interest that has been violated. Although Defendants are correct that Plaintiff does not automatically have a protected property interest under the Pension Ordinance, Plaintiff's lawsuit does not allege that he was

18

entitled to an automatic property interest under the Pension Ordinance. Plaintiff made a duty disability application, and it is the absence of a valid opinion from a majority of the three-physician medical committee (which will determine whether he has – or lacks – a property interest) that he has challenged.

The Court notes that Defendants implicitly acknowledge that Plaintiff would have a protected property interest if he is deemed totally and permanently incapacitated by a three-physician medical committee. [Dkt. No. 11, PgID 67-68] Plaintiff alleges, and there is evidence in the record to support a finding, that he may be have been denied a protected property interest. As he alleges, in a light must favorable to Plaintiff, the record reflects that the Pension Board's decision was not based on a determination by a majority of the three-physician medical committee that Plaintiff was not totally and permanently incapacitated from performing as a fireman for the City of Dearborn. Dr. Rosen's responses were inconclusive as to Plaintiff's incapacity for purposes of the Pension Ordinance, so a valid opinion from a three-physician medical committee is necessary before a determination can be made whether Plaintiff has a protected property interest.

The Court finds that Plaintiff has alleged, and has established a genuine dispute of material fact, that he is entitled to: (1) clarification of Dr. Rosen's responses (if possible and appropriate – allegedly, the City of Dearborn now utilizes Dr. Rosen

19

(rather than Dr. Wolf) for duty disability pension matters such as exist in this case; or (2) if Dr. Rosen is no longer an appropriate jointly appointed physician, an evaluation by a second physician chosen by Dr. Shiener and Dr. Wolf, for purposes of determining Plaintiff's incapacity under the terms of the Pension Ordinance.

For the reasons stated above, the Court holds that Plaintiff has established a genuine dispute of material fact that he has a protected property interest.

### 3.   *Procedural Due Process*

Defendants contend that Plaintiff was afforded sufficient procedural protections before his application was denied.  "Generally, procedural due process requires a state actor to provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Dubac v. Green Oak Twp.*, 642 F.Supp.2d 694, 703 (E.D. Mich. 2009).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.*

Defendants argue that the Pension Ordinance sets forth a specific procedure for determining whether a member is eligible for a duty disability pension – the evaluation of a three-physician medical committee.  Defendants state that Plaintiff was granted that procedure.  But, as outlined above, in a light most favorable to Plaintiff, there is a genuine dispute of material fact whether three physicians issued

20

opinions regarding whether Plaintiff was or was not permanently incapacitated for performing his duty as a fireman for the City of Dearborn because Dr. Rosen's conclusion was not clear.[5]  If the finder of fact were to conclude that Dr. Rosen did not conclude that Plaintiff was not permanently incapacitated for performing his duty as a fireman for the City of Dearborn – such that only two physicians with conflicting opinions reached the issue, Defendants did not afford Plaintiff the procedural due process to which he was entitled pursuant to the Pension Ordinance.  The Court concludes that Defendants are not entitled to judgment with respect to their argument that Plaintiff was provided all of the procedure (due process) that was required.

### 4.    Conclusion

Defendants' motions for judgment on the pleadings and for summary judgment on Plaintiff's Section 1983 claims are denied to the extent they argue Plaintiff has failed to allege and establish a genuine dispute of material fact that he has a constitutionally protected right that Defendants may have violated.

## C.    Vagueness

---

[5]The Court notes that the Pension Board did not ask Dr. Rosen for clarification regarding his "conclusion" about Plaintiff's incapacitation.  Had the Pension Board sought such clarification from Dr. Rosen – as the Pension Board had from Dr. Shiener after receiving Dr. Shiener's initial report, Dr. Rosen presumably could have issued an unambiguous opinion regarding the permanence of Plaintiff's incapacity for performing his duty as a fireman for the City of Dearborn.

A party may rely on the void-for-vagueness doctrine when a law is unconstitutionally vague because it allows for potentially discriminatory enforcement. "Due process requires that a law not be vague." *600 Marshall Entertainment Concepts, LLC v City of Memphis*, 705 F.3d 576, 586 (6th Cir. 2013). A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 128 S. Ct. 1830, 1845 (2008).

> In examining a facial challenge, this court must first "determine whether the enactment reaches a substantial amount of constitutionally protected conduct." . . .Where the enactment does not reach constitutionally protected conduct, the complaint may succeed in vagueness claim "only if the enactment is impermissibly vague in all of its applications." . . . Therefore, vagueness claims not involving first amendment freedoms must be examined in the light of the facts of the particular case at hand and not as to the statute's facial validity.

*Belle Maer Harbor v Charter Twp of Harrison*, 170 F. 3d 553, 557 (6th Cir.1999) (citations omitted).

Defendants argue that the Pension Ordinance is clear and concise, and it states specifically what requirements must be met in order to qualify and apply to receive a duty disability pension. Defendants contend that the Pension Ordinance unambiguously states that a majority of a three-person physician committee, with one physician chosen by the applicant, one chosen by the board and one agreed upon by

22

the first two physicians, must find that the applicant is permanently incapacitated from working.  Defendants assert that Plaintiff's vagueness challenge should be dismissed as a matter of law.  Plaintiff alleges and argues that the vagueness of the Pension Ordinance is reflected by the Dr. Rosen's misunderstanding of what "permanent disability" meant.

Pursuant to Section 235.09(1) of the Pension Ordinance, the Pension Board must determine whether an employee is "totally and permanently physically or mentally incapacitated for his duty as an employee." As Plaintiff contends, whether an employee is "incapacitated for his duty as an employee" turns on whether the employee can "perform the duties of the member's particular job," in this case, whether Plaintiff can perform his duty as a fireman for the City of Dearborn.  Plaintiff argues that, although Dr. Rosen found that Plaintiff was not permanently incapacitated, Dr. Rosen was "unable to determine at this time if [Plaintiff] would be able to return to his prior employment as a fireman with the City of Dearborn." Plaintiff contends that Dr. Rosen's responses constitute material evidence that the Pension Ordinance was vague as to what "incapacitated" meant.

For the reasons discussed in Section III.B. above, the Court finds that it is unclear whether Dr. Rosen believed that – or even understood that he had to determine whether – Plaintiff was incapacitated from working as a firefighter for the

City of Dearborn.  There is evidence in the record that establishes a genuine dispute of material fact as to: (1) what Dr. Rosen determined with respect to whether Plaintiff was or was not totally and permanently incapacitated for his duty as an employee, and (2) whether the City of Dearborn should have asked for clarification from Dr. Rosen as to what he meant.

The Court also notes that the required degree of certainty regarding the permanence of a member's incapacity is ambiguous.  In the first half of Section 235.09(1) (prior to the ";"), the Pension Ordinance provides that the Pension Board may retire "[a]ny member . . .who become[s] totally and permanently physically or mentally incapacitated for his duty as an employee . . ."  However, in the second half of Section 235.09(1) (after the ";"), the Pension Ordinance states that the three-physician medical committee must "report[] to the [Pension Board] by majority opinion in writing that such member is physically or mentally totally incapacitated for the further performance of duty, [and] that such incapacity will probably be permanent[.]" (emphasis added)  Such language suggests that the medical committee (by whose recommendation Defendants maintain the Pension Board is bound) need only conclude that the incapacity "will probably be permanent," yet it appears that the Pension Board must have absolute certainty of the permanence of the member's incapacity.

For the reasons set forth above – and those discussed in Section III.D., the Court concludes that the Section 235.09(1) of the Pension Ordinance is vague and denies Defendants' Motions with respect to Plaintiff's vagueness claim.

**D.     Unbridled Discretion**

The unbridled discretion doctrine usually applies in the context of the impermissible infringement of an individual's First Amendment rights. These claims typically require a showing that a statute vests "unbridled discretion in a government official over whether to permit or deny expressive activity." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994). Defendants argue that the doctrine does not apply in this case. They rely on this Court's decision in *Town*, where the Court found that the retirement system's decision in that case should be treated in the same way as any other administrative agency decision and "must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material, and substantial evidence on the whole record." *Town*, 2014 WL 1319690, at *10.

Defendants contend that the issue in this case is very simple:

Did the Pension Board abuse its discretion when it denied Plaintiff's application for duty disability pension benefits on the basis of three medical opinions, the majority of which did not find Plaintiff to be totally and permanently disabled as required by the clearly articulated eligibility requirements set forth in the Retirement Ordinance?

25

The Court finds that Defendants' argument is deficient in that they claim the Pension Board was precluded from awarding Plaintiff a duty disability pension because two physicians determined that Plaintiff was not totally and permanently incapacitated. As discussed above, it is not clear that two physicians on the three-physician committee made that determination and there is a genuine dispute of material fact whether the Pension Board's decision was supported by competent, material, and substantial evidence. And, if the Pension Board's decision was not supported by competent, material, and substantial evidence, the Pension Board abused its discretion.

The Court also notes that, if the Pension Board is constrained to follow the medical committee's recommendation (as Defendants have maintained), Section 235.09(1) of the Pension Ordinance grants the Pension Board – and the three-physician medical committee – unbridled discretion in determining if an applicant will be awarded duty disability pensions. Section 235.09(1) provides, in relevant part, that an employee who has filed a duty disability pension application "**may be retired** by the [Pension Board] . . . provided that [a] majority [of the three-physician medical committee concludes] in writing, that such member is physically or mentally totally incapacitated for the further performance of duty, that such incapacity will

26

probably be permanent, and that such member **should be retired**." [Dkt. No. 11, Ex. A, PgID 104 (emphasis added)]

The Court finds that the initial highlighted language (that the employee "**may be retired**" by the Pension Board upon satisfaction of the other conditions in those provisions) is permissive. In other words, contrary to Defendants' argument that the Pension Board is bound by the medical committee's recommendation, the Pension Ordinance does not <u>require</u> that the Pension Board uniformly award duty disability pensions to all persons who apply in writing and are found by a majority of a three-physician medical committee to be totally and permanently incapacitated. Rather, as evidenced by the word "may," the Pension Ordinance allows the Pension Board discretion whether to award a duty disability pension to an applicant the three-physician medical committee has reported "should be retired." And, as there are no parameters in the Pension Ordinance governing the Pension Board's exercise of that discretion, the Court finds that discretion is unbridled.

The language in Section 235.09(1) also affords the three-physician medical committee unbridled discretion whether to retire a member. The Pension Ordinance states that the medical committee reports to the Pension Board "by majority opinion in writing, that [(a)] such member is physically or mentally totally incapacitated for the further performance of duty, that such incapacity will probably be permanent, and

27

[(b)] that such member **should be retired**." [Dkt. No. 11, Ex. A, PgID 104 (Pension Ordinance § 235.09(1) (emphasis added))]  The Court finds that the use of the word "should" means that the three-physician medical committee could determine that a member is totally and "probably" permanently incapacitated, yet that medical committee could choose not to retire that member.  C onversely, the three-physician medical committee could determine that a member is not totally and "probably" permanently incapacitated, yet that medical committee could choose to retire that member.

The Court finds that Section 235.09(1) of the Pension Ordinance affords the Pension Board – and the medical committee – unbridled discretion.  Defendants' Motions are denied as to Plaintiff's unbridled discretion claim.

## E.    Defendants

### 1.    *Individual Defendants*

Plaintiff's Complaint names seven individuals who allegedly were members of the Pension Board.  With one exception,[6] Plaintiff does not mention the Pension Board members generally or by name other than in the caption of the Complaint.  As Plaintiff has not alleged wrongdoing by any of the individual Defendants, Defendant asserts that all of the individual Defendants should be dismissed.  More substantively,

---

[6] At Paragraph 80, Plaintiff alleges that "Brian Keith once told the Plaintiff he is 'only a trustee to go to the conferences in exotic places like Hawaii.'"

Defendants argue that the individual Defendants should be dismissed because they are entitled to qualified immunity. Plaintiff does not offer a substantive response or any authority to counter Defendants' argument. Plaintiff simply argues that members of the Pension Board (as opposed to the words in the Pension Ordinance) made the decision to deny him a duty disability pension. For this reason, Plaintiff contends that the individual Defendants should not be immune.

When considering whether a defendant is entitled to qualified immunity, the Court must determine: (1) whether, taking the allegations in a light most favorable to the plaintiff, a constitutional right has been violated; and (2) whether that right was clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (qualified immunity is an issue of law to be decided by the court). As discussed above, in a light most favorable to Plaintiff, Plaintiff has sufficiently alleged and presented evidence that a genuine dispute of material fact exists whether a constitutionally protected right of Plaintiff has been violated. Plaintiff has not, however, demonstrated that there is any binding precedent from the United States Supreme Court or the Sixth Circuit that the individual Defendants knew or should have known that their acts were unlawful. *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993).

The Supreme Court has held that qualified immunity protects an official who reasonably, even if mistakenly, acts in violation of a plaintiff's constitutional rights.

29

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991).  Only those officials who are "plainly incompetent or those who knowingly violate the law" are not protected. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  If an objectively reasonable official in the same circumstances could have believed that her or his actions were lawful in light of the established law and the information she or he possessed at the time, that official is entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

In this case, Plaintiff did not allege, and there is no evidence, that any of the individual Defendants possessed any information – or took any action – which made the denial of Plaintiff's duty disability pension application unlawful.  The individual Defendants made determinations pursuant to vague provisions of the Pension Ordinance.  The individual Defendants also had to base their decision on Dr. Rosen's opinion which, as discussed above, stated that Plaintiff's "incapacity" was not permanent.  For that reason, the individual Defendants reasonably could have interpreted Dr. Rosen's opinion to mean that Plaintiff was not totally and permanently incapacitated for his duty as an employee, such that he was not entitled to duty disability pension pursuant to the Pension Ordinance.

The Court concludes that the individual Defendants are entitled to qualified immunity.  Defendants first raised this issue in their Motion for Judgment on the Pleadings, so the Court grants Defendants' Motion for Judgment on the Pleadings

30

with respect to the individual Defendants.  The Court denies as moot Defendants'

Motion for Summary Judgment as it relates to the individual Defendants.

2.    *Municipal Liability*

In the caption of his Complaint, in addition to the individual Defendants

named, Plaintiff sued " City of Dearborn Chapter 23 Pension Ordinance & City of

Dearborn Police and Fire Revised Retirement System, Board of Trustees."  It is not

clear from that language (and the parties do not elaborate on) whether Plaintiff

intended to sue one, two, or three parties, and it is not clear whether there is even

more than one legal entity amongst that group of names.

In their motion for judgment on the pleadings (but not in their motion for

summary judgment), Defendants contend that Plaintiff has failed to sue a proper legal

entity, as they assert that "City of Dearborn Chapter 23 Pension Ordinance & City of

Dearborn Police and Fire Revised Retirement System" is not a legal entity.  Assuming

Plaintiff misnamed a single legal entity, the Court orders: (a) the Retirement System

(the municipal Defendant) to provide Plaintiff and the Court with the name of the

proper legal entity to sue, within 7 days of the date of this Order, and (b) Plaintiff to

amend his Complaint to name the proper legal entity, within 14 days of the date the

municipal Defendant provides him with the proper legal entity name.  If there is more

than one legal entity that is being sued, the parties are ordered to notify the Court,

within 14 days of the date of this Order, what legal entities are being sued.

Defendants next argue that Plaintiff has failed to allege or show municipal

liability against the Retirement System pursuant to Section 1983.

> A plaintiff can bring a claim under section 1983 when []he is deprived
> "of any rights, privileges, or immunities secured by the Constitution and
> laws," as a result "of any statute, ordinance, regulation, custom, or
> usage, of any State." 42 U.S.C. § 1983. A municipal liability claim
> against the [municipality] must be examined by applying a two-pronged
> inquiry:
>
> > (1)   Whether the plaintiff has asserted the deprivation of
> >        a constitutional right at all; and
> > (2)   Whether the [municipality] is responsible for that
> >        violation.
>
> See *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct.
> 1061, 1065-66, 117 L.Ed.2d 261 (1992). For liability to attach, both
> questions must be answered in the affirmative.

*Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d

495, 505-06 (6th Cir. 1996).  The Court has held that Plaintiff sufficiently alleged,

and established a genuine dispute of material fact, that his injury was caused by a

constitutional violation.  So,

> [h]aving answered the first question in the affirmative, [the Court]
> considers next whether the municipal defendant[] [is] responsible for
> that violation. [Plaintiff] . . . must show that the [City of Dearborn/the
> Pension] Board itself is the wrongdoer. *Collins*, 503 U.S. at 122, 112
> S.Ct. at 1067. Under *Monell*, the [City of Dearborn/the Pension] Board
> cannot be found liable unless the [P]laintiff can establish that an

32

> officially executed policy, . . . leads to, causes, or results in the deprivation of a constitutionally protected right. *Monell*, 436 U.S. at 690-91, 98 S.Ct. at 2035-36.

*Doe*, 103 F.3d at 507. *See also Lewellen v. Nashville*, 34 F.3d 345, 360 (6th Cir. 1994) (the Court must determine whether the retirement system was a cause of, or moving force behind, the alleged constitutional violation).

> In addition to showing that the [City of Dearborn/Pension] Board as an entity "caused" the constitutional violation, [P]laintiff must also show a direct causal link between the [Pension Ordinance] and the constitutional deprivation; that is, []he must "'show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993) (emphasis added) (citation omitted), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). This requirement is necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*.

*Doe*, 103 F.3d at 508.

Defendants argue that Plaintiff has not alleged or established a genuine dispute of material fact that the Pension Ordinance and the Pension Board's decision were a "moving force" behind his injury. The Court disagrees. It is undisputed that the municipality has a policy (the Pension Ordinance) in place. In a light most favorable to Plaintiff, (1) it was the Pension Board's decision – a decision based on the Pension Ordinance – that resulted in the wrongful denial of Plaintiff's duty disability pension application; and (2) that denial deprived Plaintiff of benefits to which he was entitled. The Court finds that Plaintiff has alleged and offered evidence that there was "a direct

causal link between the [Pension Ordinance] and the constitutional deprivation" he suffered, such that his "injury was incurred because of the execution of that policy." *Doe*, 103 F.3d at 508 (quoting *Garner*, 8 F.3d at 364).

Accordingly, the Court holds that there is a genuine dispute of material whether municipal liability exists in this case. Defendants' Motions are denied as to the Retirement System (the municipal Defendant).

## IV.   CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendants' Motion for Judgment on the Pleadings [#11] is **GRANTED IN PART** and **DENIED IN PART**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [#26] is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's cause of action is **DISMISSED** as to Carl Meyers, Brodie Killian, Alan C. Brzys, Jeffrey Gee, Brian Keith, Michael Weinburger, and Thomas Norwood.

IT IS FURTHER ORDERED that if there is only one legal entity being sued, the Retirement System (the municipal Defendant) shall provide Plaintiff and the Court with the name of the proper legal entity to sue, within 7 days of the date of this Order.

IT IS FURTHER ORDERED that Plaintiff shall amend his Complaint to name the proper legal entity, within 14 days of the date the Retirement System (the municipal Defendant) provides him with the proper legal entity name.

IT IS FURTHER ORDERED that, if there is more than one legal entity that is being sued, the remaining parties are ordered to notify the Court, within 14 days of the date of this Order, what legal entities are being sued.

IT IS ORDERED.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  March 22, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 22, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

35